RONALD STEPHEN WOOD V. STATE

No. 33,278.  May 17, 1961
Motion for Rehearing Overruled June 24, 1961
Second Motion for Rehearing Overruled October 11, 1961

*Byron L. McClellan,* Gatesville, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for assault with intent to murder with malice; the punishment, 6 years.

The evidence shows that the appellant, in company with two other boys, escaped from the Gatesville State School for boys about 4:00 A.M. on May 22, 1959. They walked to Gatesville and hid in a warehouse, belonging to the Coryell County Cotton Oil Mill, where they remained during the day.

In his written statement which was introduced in evidence, appellant stated that:

"* * * Sometime during the afternoon of that day I noticed a key like a night watchman uses to punch his clock. So we decided that we would knock the watchman in the head and steal his money, gun and car. We got an openend S wrench, a sledge hammer and an iron bar about ¾ of an inch thick and about 18 inches long so that we would all have a weapon. We stayed hidden until night and watched the watchman make one round and decided to jump him the next round. We all hid close to a key on a telephone post that was inside the building. I had the hammer, R——— had the wrench and H——— had the iron bar. When the old man came up to the key, R——— jumped him and hit him with the wrench, R——— called me and I came out and hit the old man three times, I think it was on his feet and legs * * * I picked up the hammer and I wiped it off with a hankerchief and we left the building. I threw the hammer in a ditch outside the building * * *."

R. S. Ray, operator of the Coryell County Cotton Oil Mill, testified that Willie Painter was night watchman at the mill and that early in the evening of May 22, 1959, neither he nor his son Edwin, who also worked at the mill, had seen Willie making his rounds. They became worried and about 10:30 P.M. they went to the mill to look for him and after extensive searching, found him in the "lint" house leaning against a cotton bale. He was bloody and blood was dripping down his clothes and had formed a puddle between his feet; the blood was coming from at least 3

"terrible licks" on his head and he could not answer questions intelligibly. Ray and his daughter, who had also accompanied him to the mill, then took Painter to the hospital and Edwin called the sheriff.

The testimony of the Sheriff of Coryell County shows that, after a preliminary investigation at the mill and a visit to the hospital, he arrested the appellant and his two companions on Waco Street in Gatesville on the night of May 22, 1959, and that the next day the appellant took him to where he had thrown the hammer the night before and "told me that this was the hammer he used to attack Willie Painter", the injured party.

Dr. E. E. Lowery testified that he gave Willie Painter emergency treatment at the hospital in Gatesville on the night of May 22, 1959, and found that he was very badly battered and beaten; that his skull was caved in at one point and that the cuts were definitely such as could have caused death. He further testified that he transferred the injured party to a neurosurgeon in Waco following the emergency treatment and that he didn't believe that the injured party would arrive there alive.

The appellant, while testifying, admitted his participation in the assault but stated that it was the other boys' idea and that he finally agreed to go along. He also stated that he had the sledge hammer during the attack but didn't know if he hit the injured party or not. Several other witnesses testified in his behalf as to his status at the school and concerning his conduct while an inmate there.

Appellant seeks a reversal on the ground that the trial court lacked jurisdiction to try him because at the time of his trial he was still laboring under the judgment of the Juvenile Court of Harris County, rendered on April 24, 1959, adjudging him to be a juvenile delinquent, for an act he committed before that charged in this case, and committing him to the custody of the Texas Youth Council from which custody he had not been discharged and that until so discharged he is immune from prosecution as an adult.

At the time of indictment and trial the appellant was 17 years of age or over and was, therefore, amenable to prosecution for the crime with which he was charged. The fact that he had previously been adjudicated a juvenile delinquent and was still such at the time of indictment and trial, did not deprive the

district court of jurisdiction to try him so long as at the time of said indictment and trial he was of the age of 17 years. We know of no authority to the contrary nor have we been referred to any.

Appellant further seeks a reversal on the ground that he is twice being punished for the same act. He argues that but for the act which he has been herein convicted of having committed, he would have been discharged from the custody of the Texas Youth Council and cites as proof of this the testimony of the superintendent of the Gatesville State School, where he was held as an inmate from the time of the commission of the offense until indictment, that such was considered by the council as evidenced by a letter from the council to the superintendent concerning the discharge of appellant. The fact that previous to his indictment and trial the council took into account the act and offense of which the appellant has herein been convicted as evidence bearing upon the question of his rehabilitation and the propriety of his being discharged from their custody—following which he was not released—does not mean that the appellant has been subjected to punishment for any fact or circumstance considered by the Youth Council in reaching their decision. The record fails to reveal that the appellant was, before this indictment and trial, charged in either the Juvenile or District Courts of Coryell County with having committed the offense of which he has herein been convicted. Nor does the record reflect that the appellant sought unsuccessfully to have any such charges brought against him in the juvenile court. It is concluded that the appellant has not been twice placed in jeopardy for the same offense.

Appellant also contends that he was denied a speedy trial guaranteed him by the Constitution. It appears from the record that between the time of the commission of the offense and the time of indictment, three grand juries met and adjourned in Coryell County without returning an indictment against him for this offense. This contention under similar facts was resolved against the appellant in Elliot v. State, 168 Tex. Cr. R. 140, 324 S.W. 2d 218.

The evidence is sufficient to support the conviction, and no error appearing the judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING

McDONALD, Judge.

In his motion for rehearing, appellant contends that this court erred in holding that the fact that he had previously been adjudicated a juvenile delinquent, and still was at the time of indictment and trial, did not deprive the district court of jurisdiction to try him so long as at the time of said indictment and trial he was seventeen years of age. Appellant urges that the provisions of Sec. 5 of Art. 2338-1, V.A.C.S., constitute authority for his contention.

That section of the article does state that when jurisdiction shall have been obtained by the court (meaning the juvenile court) in the case of any child, such child shall continue under the jurisdiction of the court until he becomes twenty-one (21) years of age, unless discharged prior thereto.

Appellant further contends that a holding that the above statute is not pertinent to a proper determination of this case would result in placing a juvenile delinquent under a different status at the time of trial than would be any other minor who might be brought to trial under indictment. He further contends that if the juvenile delinquent were acquitted as an adult, then he could be returned to the Gatesville State School for Boys for punishment —as a delinquent child— for the same offense for which he was acquitted by the district court.

We think this contention has heretofore been decided adversely to appellant, in Dearing v. State, 151 Tex. Cr. Rep. 6, 204 S.W. 2d 983, which held as follows:

"* * * the trial court had the legal right to try appellant for the offense with which he stood charged, it also had the right to take him from the State's training school and bring him before the bar of justice to be dealt with as provided by the Penal Code of this State. Otherwise, he would be immune from prosecution until he had reached the age of 21 years."

In his concurring opinion in the Dearing case, Judge Hawkins stated:

"When a boy passes the age of 17, or a girl passes the age of 18, it ceases to be a delinquent child."

While my two able colleagues concur with me in the disposition of this case, the writer desires to express his personal views:

I would here hold that once a boy past the age of seventeen, or a girl past the age of eighteen, has been tried for a criminal offense in a county or district court of this state, said boy or girl ceases to be amenable to the terms of the Juvenile Delinquency Act, Art. 2338-1, V.A.C.S.

I say this despite the provision of the Juvenile Delinquency Act, Sec. 5 of Art. 2338-1, supra, for the reason that the trial of the child by a criminal court divests the jurisdiction of the juvenile court over the child. The trial in the criminal court makes operative the discharge of the child by the juvenile court.

Although I know that this court has never heretofore expressed itself on this exact question, I recognize the importance of the question here raised. I have no doubt as to the right of the state to try a seventeen-year-old boy for a crime, though committed while under the age of seventeen years.

If the state is successful in securing a conviction in a felony case, the seventeen-year-old boy goes to the penitentiary. If he is tried for a misdemeanor, he goes to jail or pays a fine, or both.

The writer thinks the juvenile court ceases to have jurisdiction when the trial is had in a criminal court, regardless of the results of the trial —whether it be a conviction or an acquittal. One who has once acquired the status of an adult under the penal laws of this state and has come under the jurisdiction of a criminal court, by being put to trial in a criminal court, can never revert to the status of a juvenile, whether it be a juvenile or a "juvenile delinquent."

I think the purpose of the Juvenile Act is laudable. But, while many of the provisions are practical, there is no escaping the fact that some of the provisions are illogical. I do not feel that the legislature of this state intended to give to the juvenile courts an advantage over a boy or girl, previously adjudged to be a "delinquent child," who is tried as an adult in a criminal court, to still be, if acquitted, subject to the jurisdiction of a juvenile court.

I trust that this personal expression will focus attention upon what I feel to be an inequitable situation.

Appellant also insists that this court erred in holding that he was not punished twice for the same act.

We remain convinced that this contention was correctly disposed of in our original opinion.

Lastly, appellant says that the court erred in holding that he was not denied a speedy trial, as guaranteed by the Constitution.

We think this contention is without merit. Dearing v. State, supra. See, also, Peterson v. State, 156 Tex. Cr. Rep. 105, 235 S.W. 2d 138.

Remaining convinced that the case was correctly disposed of in our original opinion, appellant's motion for rehearing is in all things denied and overruled.